UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80799-CV-HURLEY/HOPKINS

SANCTUARY SURGICAL
CENTRE, INC., et al.,

    Plaintiffs,

v.

AETNA, INC.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss [DE # 22]. For the reasons to follow, the Court will grant Defendant's motion and dismiss Plaintiffs' Second Amended Complaint without prejudice.

### I.

The essential facts of this case have previously been set forth in *Sanctuary Surgical Centre, Inc. v. United Healthcare, Inc.*, No. 10-cv-81589-DTKH, 2011 WL 2134534 (S.D. Fla. May 27, 2011), a related case from which Defendant in the instant action was severed. In brief, Plaintiffs are four surgical centers and two medical service providers seeking to recover payment of benefits allegedly due under employer health benefits plans.[1] Defendant, Aetna, Inc., is the insurer providing and administering coverage under the plans. Plaintiffs performed a procedure known as "manipulation under anesthesia" ("MUA") on 347 patients with Aetna policies after having received pre-authorization from Defendant. Although Defendant had previously made payments for MUAs,

---

[1] The patients to whom coverage is allegedly owed assigned their benefits under the plans to Plaintiffs. Second Am. Compl., ¶ 20 [DE # 15].

Defendant denied claims for the MUAs at issue on the basis that they were "an unproven service, experimental, investigational, not medically necessary, or for not being a covered benefit or covered service under the relevant plan." Second Am. Compl., ¶ 22 [DE # 15]. Notably, Plaintiffs' claims arise out of a variety of different claims, and Plaintiffs administered the MUAs at issue to treat a variety of different conditions.

Based on these allegations, Plaintiffs assert four claims:

- wrongful denial of benefits under § 502(a)(1)(B)[2] of ERISA;
- breach of the fiduciary duty of loyalty under § 502(a)(3) of ERISA;
- failure to provide full and fair review; and
- equitable estoppel under the federal common law of § 502(a)(1)(B) of ERISA.

Defendant responds that the Complaint must be dismissed for failure to adequately plead a claim under ERISA, failure to properly allege wrongful denial of benefits under § 502(a)(1)(B), lack of derivative standing to sue due to improper assignment of benefits, failure to exhaust administrative remedies, failure to adequately plead denial of full and fair review, and failure to plead the ambiguity required to assert equitable estoppel. Defendant also argues that equitable relief under § 502(a)(3) is unavailable under these circumstances as a matter of law.

Having reviewed the parties' arguments, the Court concludes that the Amended Complaint must be dismissed for failure to adequately plead the existence of the ERISA plans under which they sue or that any denials of benefits were not only wrongful but also exceeded Defendant's discretion under the plans. The Court further concludes that Plaintiffs may assert their breach of fiduciary duty claim under the catchall provision of § 502(a)(3); however, they must first demonstrate their standing

---

[2] The Employee Retirement Income Security Act is codified at 29 U.S.C. § 1001, *et seq.*

2

to assert these claims by alleging that they have obtained a written assignment from the plan beneficiaries and by demonstrating that these assignments encompassed all of the derivative claims asserted—i.e., more than just the right to receive payment. The Court also makes additional findings provided herein.

## II.

This Court possesses federal subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under ERISA, 29 U.S.C. § 1001 *et seq*. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the Southern District of Florida.

## III.

On this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and views all inferences in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, ----; 129 S. Ct. 1937, 1949 (2009), and regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). The Court will apply these standards to each of the issues presented by the instant motion.

    A.    *Plaintiffs' Standing to Sue Under the Plans*

"Healthcare providers may acquire derivative standing [to sue under an ERISA-governed plan] by obtaining a written assignment from a 'beneficiary' or 'participant' of his right to payment of benefits . . . ." *Physicians Multispeciality Grp. v. Health Care Plan of Horton Homes, Inc.*, 371

F.3d 1291, 1294 (11th Cir. 2004). "Like any other contract, the scope of [an] assignment depends foremost upon the language of the agreement itself." *Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, Nos. 04-1253-WEB, 04-1339-WEB, 2006 Wl 3469544, *7 (D. Kan. Nov. 30, 2006). In the instant case, Plaintiffs allege that "[e]very patient covered by Aetna assigned to Plaintiffs benefits to which the patient was entitled under his or her insurance policy, including (but not limited to) the right to receive directly from Aetna payments to which the patient was entitled under the terms of the policy." Second Am. Compl. ¶ 20 [DE # 15]. Under the standard set forth in *Horton Homes*, this allegation is insufficient, as it does not establish a "written assignment." 371 F.3d at 1294. Moreover, without access to the language of the assignments, the Court cannot evaluate their legal effect. Thus, even if the Court were to accept Plaintiffs' allegation that the assignments conveyed the right to receive payments, Plaintiffs have not demonstrated its standing to sue for equitable relief.

Moreover, Defendant argues that Plaintiff cannot establish standing to sue under § 502(a)(3) for equitable relief even if it can show written assignments because the plans expressly prohibit assignment of anything other than a right to receive payment. Mot. to Dismiss, 19-20 [DE # 22] ("All rights of the Member to receive benefits hereunder are personal to the Member and may not be assigned, subject to the following sentence. A Member's right to receive payment for benefits will be assigned to a Provider . . . ."). Plaintiffs respond that Aetna is estopped from asserting the anti-assignment clauses now because they failed to assert them at any time throughout the parties' protracted dealings. *See Hermann Hosp. v. MEBRA Med. & Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992). However, Defendant would have had no occasion to assert the anti-assignment clauses when Plaintiffs previously demand payment because the clauses specifically allow the right to

payment for benefits to be assigned. It is only now that Plaintiffs sue for breach of various fiduciary duties that Defendant has reason to rely on the anti-assignment clauses. As such, Plaintiffs' reliance on *Herman Hospital* is misplaced, and there is no basis to estop Defendant from asserting the clauses. Plaintiffs' claims under § 502(a)(3) must be dismissed for this additional reason, and even if Plaintiffs were to re-plead with allegations of express, written assignments of equitable benefits, their claims would still fail to the extent the applicable plans incorporate prohibitions on assignment like the one provided in Defendant's motion to dismiss.

### B.     *Failure to State a Claim for Wrongful Denial of Benefits*

As with the Plaintiffs' first complaint in the original action, the allegations in the instant Complaint fail to adequately establish the basis in the plans Plaintiffs' claim for wrongful denial of benefits. *See Sanctuary Surgical*, 2011 WL 2134534 at *3. While Plaintiffs have identified the patients, the conditions being treated, the group ID assigned to the applicable plans, and the date the procedures were performed, Plaintiffs still have not stated the specific term or terms of the plans that Defendant allegedly violated. While Plaintiffs are not necessarily required to quote provisions from each of the plans involved, the allegations must give the Court some sense of the actual language of the agreements and the degree to which the language provided represents the provisions in the other plans. Merely stating in conclusory fashion that every agreement required Defendant to pay for Plaintiffs' services is not enough because it does not allow the Court to evaluate for itself the nature of the parties' obligations. For instance, Defendant points out that at least some of the agreements state not only that reimbursable benefits must be "covered" but that whether they are covered is determined based on Defendant's "reasonable exercise of . . . business judgment." Def.'s Mot. to Dismiss, Ex. 1, pg. 3, § 2.1 [DE # 22-1]. Therefore, to sufficiently allege a breach of Defendant's

5

duties under the contract, Plaintiffs would have to allege not only an improper determination that certain benefits are not covered by the policy but also that in making the determination Defendant exceeded its reasonable discretion. *See, e.g.*, *Advanced Rehabilitation, LLC v. Unitedhealth Grp., Inc.*, No. 10-cv-00263 (DMD)(JAD), 2011 WL 995960, *3 (D.N.J. Mar. 17, 2011). Because Plaintiffs have not adequately pleaded the relevant plan terms, the Court is unable to determine whether Plaintiffs have stated a legally sufficient claim for breach of the plans. Accordingly, the Court must again dismiss the complaint.

### C. Breach of Fiduciary Duty Under § 502(a)(3)

#### 1. Whether Plaintiffs' Claims Under Part (a)(3) Are Barred as a Matter of Law

Apart from the standing issues addressed in Part III.A above, Defendant additionally argues that Plaintiffs may not assert their claims under § 502(a)(3)—codified at 29 U.S.C. § 1132(a)(3)—alongside claims under § 502(a)(1)(B), because part (a)(3) is a catch-all remedy that is available only if part (a)(1)(B) does not provide an adequate remedy. *Ogden v. Blue Bell Creameries U.S.A. Inc.*, 348 F.3d 1284, 1287-88 (11th Cir. 2003). It is true that Plaintiffs could not assert a claim under part (a)(3) merely as an alternate means of obtaining relief for the wrongful denial of benefits that is the basis of Plaintiffs' claim under part (a)(1)(B). However, if Plaintiffs assert an alternate theory not predicated on wrongful denial of benefits, a claim for equitable relief under the catchall provision is viable. *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1073-74 (11th Cir. 2004). In the instant case, for the purposes of their claim under part (a)(3), Plaintiffs concede[3] they "had no 'benefits due [them] under the terms of [the] plan'"—and therefore no claim

---

[3] It is irrelevant that Plaintiffs do not concede an entitlement to benefits under the other counts of the Second Amended Complaint so long as for the purposes of their alternative claim under part (a)(3) they make such a concession.

under part (a)(1)(B)—but argue that they can nevertheless assert a claim under part (a)(3) based on Defendant's allegedly deceptive practices. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). Thus, at this stage the Court is willing to accept that such a claim would be viable, subject to the other concerns addressed in this Order.

### 2. Whether Plaintiffs Have Adequately Pleaded Their Claim Under Part (a)(3)

Defendant also contends that even if their claim under part (a)(3) is legally permissible, Plaintiffs have failed to allege it with sufficient particularity. On this point, the Court agrees. Plaintiffs' claim is premised on the notion that Defendant's practice of granting pre-approvals for MUAs and then ultimately denying coverage was deceptive to the point of being materially misleading. Because this claim sounds in fraud, Plaintiffs must comply with Federal Rule of Civil Procedure 9(b). Although Rule 9(b) does not necessarily require Plaintiffs to plead the time, place, and content of each of the hundreds of alleged acts of deception, *see, e.g.*, *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (2d Cir. 1984), Plaintiffs cannot rely on the pre-approvals Defendant granted without describing their substance and significance. Merely alleging pre-approvals and nothing more falls well short of the particularity required by Rule 9(b).

### D.   Exhaustion & Futility of Administrative Remedies

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997). "However, district courts have discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate." *Id.* In the instant case, Plaintiffs allege that they filed all required internal appeals to their conclusion and that all of the appeals were denied. Second Am. Compl. ¶ 23 [DE # 15]. For

7

the purposes of the instant motion to dismiss, the Court accepts this allegation as true and finds that Plaintiffs have sufficiently alleged exhaustion of administrative remedies.

However, Plaintiffs' alternative allegations of futility are insufficient. Plaintiffs argue that "[f]utility has been established by [their allegation] that numerous denied appeals . . . exemplif[y] the meaningless of the administrative process." Pls' Resp. Opp'n Mot. to Dismiss, 14 [DE # 26]. This argument fails because "[t]he test for 'futility' is not . . . whether the employees' claims would succeed, but whether the employees could have availed themselves of the grievance procedure." *Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1224 (11th Cir. 1985). Even if the numerous denied appeals demonstrate a very low likelihood of success, as long as Plaintiffs *could have appealed* but did not, the futility requirement is not met. For this reason, Plaintiffs' allegations of futility fail as a matter of law.

    E.    Full & Fair Review

Plaintiffs assert failure to provide full and fair review as their third cause of action. The regulations promulgated under ERISA dictate that every employee benefit plan must "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination" that provides "a full and fair review." 29 C.F.R. § 2560.503-1(h)(2). However, it is not clear what remedy Plaintiffs seek based on Defendant's alleged violation of this section, and courts have held that a substantive damage remedy is rarely appropriate. *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009). Often, courts elect to "[r]emand to the plan administrator for full and fair review." *Id.* (citing cases from the Second, Fourth, Sixth, Seventh, Ninth, and Tenth Circuits). Without knowing the remedy sought for this purported violation, the Court cannot properly evaluate the sufficiency of Plaintiffs' allegations. Therefore,

if Plaintiffs elect to file a third amended complaint pursuant to this Order and reassert their claim for failure to provide full and fair review, they must specify the relief sought.

      F.     Equitable Estoppel

To successfully state a claim for equitable estoppel, Plaintiffs must "show (1) the relevant provisions of the plan at issue [that] are ambiguous, and (2) [that] the provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." *Jones*, 370 F.3d at 1069 (citing *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285-86 (11th Cir. 1990)). As in part III.C.2, *supra*, Plaintiffs attempt to rely on the fact that Defendant granted pre-approvals and later denied coverage to demonstrate an ambiguity in the plans. However, as above, Plaintiffs must explicate the nature and significance of the pre-authorizations under the plans before the Court can accept this reasoning. At this point, the mere fact that Defendants pre-approved a treatment does not support the proposition that coverage for that treatment could only then be denied as the result of some ambiguity. Otherwise, there would be no apparent distinction between a pre-approval and a final determination that a benefit is covered by the plan.

**IV.**

In light of the foregoing, the Court will grant Defendant's motion and dismiss Plaintiffs' Second Amended Complaint. Although Plaintiffs have twice amended their original complaint, in its discretion the Court finds that dismissal with prejudice is inappropriate at this stage.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. The motion [DE # 22] is **GRANTED**.

9

Order Granting Defendant's Motion to Dismiss
Sanctuary Surgical Ctr., Inc. v. AETNA, Inc.
Case No. 11-80799-CV-HURLEY

2. The Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE** to file a third amended complaint within **THIRTY (30) DAYS** of the date this Order is entered.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 22nd day of March, 2012.

_____
Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*